UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KURELL BROWN,

                              Plaintiff,

                                                        9:12-CV-1346
v.
                                                        (GTS/TWD)
JOHN DOE, et al.,

                              Defendants.
_____

APPEARANCES:                          OF COUNSEL:

KURELL BROWN
Plaintiff *pro se*
06-A-1186
Upstate Correctional Facility
Box 2001
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN          ADELE M. TAYLOR-SCOTT, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for the Remaining Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

     *Pro se* Plaintiff Kurell Brown has commenced this action under 42 U.S.C. § 1983

alleging the deprivation of his civil rights while he was confined at the Great Meadow

Correctional Facility ("Great Meadow").  The lawsuit arises out of the handling of Plaintiff's

alleged attempt to commit suicide by ingesting pills on July 5, 2012.  (Dkt. No 29.)

     Plaintiff initially sued John Doe, Nurse Administrator at Great Meadow, and Jane Doe, a

nurse in the Great Meadow Special Housing Unit ("SHU").  (Dkt. No. 1.)  In a Decision and

Order filed on October 15, 2012, the Court ordered *sua sponte* that the Superintendent at Great Meadow be added as a defendant solely for purposes of service and discovery, in order to give Plaintiff an opportunity to ascertain the identities of John and Jane Doe.  (Dkt. No. 6 at 3, 5.) Plaintiff thereafter filed an Amended Complaint substituting RN R. Brunelle ("Brunelle") for Defendant Jane Doe.  (Dkt. No. 29.)

Plaintiff subsequently moved for summary judgment and entry of default.[1]  (Dkt. No. 39.) Defendants Steven Racette ("Racette"), Great Meadow Superintendent, and Brunelle thereafter cross-moved for summary judgment.  (Dkt. No. 46.)[2]  Plaintiff has opposed the cross-motion. (Dkt. No. 49.)  For the reasons that follow, the Court recommends that: (1) Plaintiff's motion for summary judgment and entry of default be denied; (2) Defendants Racette and Brunelle's motion for summary judgment be granted; and (3) the Amended Complaint be *sua sponte* dismissed with prejudice as against Defendant John Doe pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I.    BACKGROUND

When Plaintiff arrived at Green Meadow on June 29, 2012, he told the intake medical staff that he was not on medication and had no medical or mental health issues at the time.  (Dkt. Nos. 46-5 at ¶ 5; 47 at 3-4.)  On July 5, 2012, the Great Meadow Medical Department was asked to respond to a sick call by Plaintiff.  (Dkt. No. 46-5 at ¶ 6.)  Defendant Brunelle, who responded, had no contact with Plaintiff prior to that time.  *Id.*  When Brunelle appeared at Plaintiff's cell at

---

[1] Plaintiff has moved for the appointment of counsel three times in this litigation.  (Dkt. Nos. 14, 15, and 32.)  The motions have been denied without prejudice.  (Dkt. Nos. 16, 20, and 34.)

[2] Plaintiff's motion and Defendants' cross-motion for summary judgment have been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c) by Text Orders of July 12, 2013, and August 14, 2013.

around 9:00 a.m., she found him to be highly agitated.  *Id*. at ¶ 7.

According to Plaintiff, he informed Brunelle that he had an imminent desire to commit suicide, left an envelope on the cell gate, and proceeded to swallow nine pills of unknown varieties and functions.[3]  (Dkt. No. 29 at 5.)  Plaintiff claims that Brunelle at first attempted to intervene but then turned to the escorting officer, told him "by the way, he didn't swallow anything," and walked off.  *Id*. at 6.  In her Declaration, Brunelle states that Plaintiff did not articulate to her that he was experiencing any medical problem, and she did not observe him place any actual substances in his mouth.  (Dkt. No. 46-5 at ¶ 7.)  Nonetheless, because Plaintiff was so agitated, Brunelle alerted Corrections Sergeant D. Beebe ("Beebe"), the sergeant on duty in the cell block.  (Dkt. Nos. 46-5 at ¶ 8; 46-6 at ¶ 3.)

A report prepared by Beebe on the date of the incident indicates that Brunelle informed him at around 9:00 a.m. that Plaintiff appeared to be highly upset.  (Dkt. No. 46-6 at 5.)  Beebe went to Plaintiff's cell and was told by Plaintiff that he didn't care anymore and had taken nine pills which he would not identify.  *Id*.; *see also* Dkt. No. 29 at 6.  Plaintiff would not tell Beebe how he received the pills.[4]  In the report, Beebe described Plaintiff as having been uncooperative in the interview.  *Id*.  When Beebe noticed that Plaintiff had abrasions on his left wrist, he directed that Plaintiff be escorted to the Green Meadow hospital.  (Dkt. No. 46-6 at ¶ 4.)  Beebe instructed another corrections officer to search Plaintiff's cell for pills and was later notified that

---

[3]  Plaintiff has explained that he attempted suicide "due to an overwhelming sense of dread at the thought of returning to Upstate facility . . . [where] employees <u>keep</u> Plaintiff under duress."  (Dkt. No. 39 at ¶ 1.)

[4]  In his motion papers, Plaintiff states that he obtained the pills "from a cache of subjects/inmates."  (Dkt. No. 39 at ¶ 1.)

no contraband had been found.  *Id.* at 5.

According to Plaintiff, several times on the way to the hospital, he told Beebe he felt like he needed to vomit, although despite retching, no vomiting occurred.  (Dkt. No. 29 at 6.) Plaintiff's pain also began to get worse.  *Id.*  Plaintiff claims he blacked out quite a few times and was in and out of consciousness, and that he told Brunelle he was experiencing labored breathing at points, suffering from extreme muscular cramping, throat swelling, fatigue, directional confusion, migraines, trembling that would not stop, extreme sensitivity to light and noise, severe nasal discharge, and sharp pain.  *Id.*  In her Declaration, Brunelle states that Plaintiff did not exhibit any symptoms that were consistent with having taken an overdose, and there was no suggestion that he had access to any medication since arriving at Great Meadow.[5]  (Dkt. No. 46-5 at ¶ 11.)  Based upon her observations, "including plaintiff's exaggerated but unconvincing behaviors, [Brunelle] did not believe Plaintiff needed medical treatment for his purported consumption of pills."  *Id.* at ¶ 12.

However, Brunelle, as had Beebe, noticed that Plaintiff had fresh abrasions on his left wrist.  (Dkt. No. 46-5 at ¶ 10.)  Because of Plaintiff's apparent attempt at self-harm, as indicated by the abrasions on his wrist, Brunelle notified personnel in the Great Meadow Mental Health Unit, per facility protocol.  (Dkt. Nos. 46-5 at ¶ 13; 47 at 7.)  Beebe contacted a social worker, who interviewed Plaintiff and recommended that he be placed in a mental observation unit on twenty-four hour watch.  (Dkt. No. 46-6 at ¶ 8.)  Plaintiff was placed on twenty-four hour watch for two days.  *Id.* at ¶ 9.  Beebe believes that Plaintiff remained in the Mental Health Unit until he

---

[5] Plaintiff's medical records reveal that in June of 2012, before he was moved to Great Meadow, he was found to have been hoarding Claritin D.  (Dkt. No. 47 at 5.)

was transferred to Upstate Correctional Facility on or about July 9, 2012. (Dkt. No. 46-6 at ¶ 10; *see also* Dkt. No. 46-6 at 24-36.)

## II. APPLICABLE LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The nonmovant must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.[6] *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

---

[6] A verified complaint is to be treated as an affidavit for summary judgment purposes, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Plaintiff's Complaint in this case was properly verified by declaration under 28 U.S.C. § 1746. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (use of the language "under penalty of perjury" substantially complies with 28 U.S.C. §1746).

"Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876 at *3, 1999 U.S. Dist. LEXIS 16767 at *8 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).[7]

Plaintiff did not submit a statement of material facts in support of his motion for summary judgment as required under N.D.N.Y. L.R. 7.1(a)(3). Nor, as the local rule requires, did Plaintiff respond to the Statement of Material Facts filed by Defendants on their cross-motion for summary judgment.[8] Where, as in this case, a party has failed to respond to the movant's statement of material facts as required under N.D.N.Y. L.R. 7.1(a)(3), the facts in the movant's

---

[7] Copies of unpublished decisions cited herein will be mailed to Plaintiff as a *pro se* litigant. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[8] L.R. 7.1(a)(3) requires the opposing party to file a response to the movant's Statement of Material Facts. Under the rule, the response "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises."

statement will be accepted as true (1) to the extent they are supported by evidence in the record,[9] and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion.[10] *See Champion,v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct as assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted). In deference to Plaintiff's *pro se* status, I have opted to review the entire record in determining if there are material facts in dispute.

## III.    ANALYSIS

### A.    Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

---

[9] L.R. 7.1(a)(3) provides that "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." However, *see Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts]. It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

[10] Defendants have complied with L.R. 56.2 by providing Plaintiff with the requisite notice of the consequences of his failure to respond to their summary judgment motion. (Dkt. No. 24 at 3.)

available are exhausted." 42 U.S.C. § 1997(e). The PLRA requires "proper exhaustion" of prison administrative remedies which includes compliance with agency deadlines and procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "[P]roper exhaustion . . . means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits)." *Id.* Exhaustion is mandatory, and an inmate cannot satisfy the PLRA's exhaustion requirement by filing an untimely or administratively defective grievance or appeal. *Id.* at 84-85.

Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Procedure ("IGP") has three stages which prison inmates must complete. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5; *see also Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009). First a grievance complaint is submitted to the Inmate Grievance Resolution Committee ("IGRC") for an initial determination. The grievance must be submitted within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a). Next, if the IGRC decision is adverse to the inmate, he has seven calendar days to appeal to the prison superintendent. *Id.* at § 701.5(c). If dissatisfied with the superintendent's decision, an inmate has another seven calendar days to appeal the superintendent's decision to the Central Office Review Committee ("CORC"). *Id.* at § 701.5(d).

Defendants contend that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies with regard to his Eighth Amendment claim for inadequate medical care in connection with his ingestion of pills.[11] Because failure to exhaust is an affirmative defense, defendants bear the burden of showing that a plaintiff has failed to exhaust his available administrative remedies. *See Murray v. Palmer*, No. 9:03-CV-1010 (GTS/GHL),

---

[11] Defendant Racette included failure to exhaust in his Answer to Plaintiff's initial Complaint. (Dkt. No. 12 at ¶ 22.) Defendants Racette and Brunelle have moved for summary judgment in lieu of answering Plaintiff's Amended Complaint. (Dkt. No. 46 at 1.)

2010 WL 1235591, at *4, 2010 U.S. Dist. LEXIS 32014, at *16 (N.D.N.Y. Mar. 31, 2010).

Defendants have submitted the Declaration of Jeffrey Hale ("Hale"), Assistant Director for the DOCCS Inmate Grievance Program, in support of their failure to exhaust defense. (Dkt. No. 46-3.) According to Hale, a search of the data base containing records of all grievances that have been appealed to CORC by Plaintiff revealed that Plaintiff had not appealed any grievances alleging that he received inadequate medical treatment in relation to his attempted suicide in 2012, or grievances that staff at Great Meadow failed to prevent him from committing suicide in 2012. *Id*. at ¶¶ 2-3. Appeal to CORC is necessary to complete the exhaustion process. *See Morrison v. Stefaniak,* 523 F. App'x 51 (2d Cir. 2013) (summary order) (upholding dismissal of complaint because plaintiff failed to appeal IGRC's decision); *Belile v. Griffin*, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *3-4, 7, 2013 U.S. Dist. LEXIS 47137, at *10, 22-23 (N.D.N.Y. Feb. 12, 2013) (plaintiff failed to exhaust his administrative remedies because he had not followed through on all of the steps, *i.e.*, he did not appeal to the superintendent of the facility or appeal any unfavorable decision of the superintendent to CORC). Therefore, Plaintiff has failed to exhaust his administrative remedies.

The Court's inquiry does not, however, end with a determination that DOCCS provided an administrative grievance procedure and Plaintiff failed to exhaust his administrative remedies under that procedure. Failure to properly exhaust may be excused where: "(1) administrative remedies were not in fact available to the prisoner, (2) defendants' own actions inhibit[ed] exhaustion, or (3) special circumstances . . . justify non-exhaustion." *Messa v. Goord*, 652 F.3d

9

305, 309 (2d Cir. 2011) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004))[12]

According to Plaintiff, he filed two grievances at Great Meadow, the second because he did not receive an answer to the first. (Dkt. No. 49 at 1.) Plaintiff did not receive a response to the second grievance and filed a third grievance after he was returned to Upstate. *Id*. That grievance was rejected as untimely. *Id.* Plaintiff was unaware that an unanswered grievance was appealable, and because of being placed on suicide watch, being in transit shortly thereafter, and the imposition of another deprivation order for smuggling contraband upon his return to Upstate, Plaintiff did not have access to a law library to find out that he had the right to appeal. *Id*. at 2. Plaintiff thought that he had exhausted his administrative remedies by filing the grievances to which he received no response, but believing that the issue was still being avoided, he sent a copy of the third grievance to the Inspector General's Office. *Id.*

"When an inmate claims ignorance of the grievance procedure, it becomes a question of fact whether the grievance procedure was an available administrative remedy he was required to exhaust." *Arnold v. Goetz*, 245 F. Supp. 2d 527, 538 (S.D.N.Y. 2003) (citation and internal

---

[12] Subsequent to *Hemphill*, the Supreme Court decided *Woodford v. Ngo*, 548 U.S. 81 (2006). The question addressed in *Woodford* was whether "a prisoner can satisfy the [PLRA's] exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id*. at 83-84. The Supreme Court resolved the question in the negative, explaining that PLRA requires "proper exhaustion" – "using all steps that the agency holds out, and doing so properly (so that the agency addressed the issues on the merits)." *Id.* at 90 (citation omitted). Although the Second Circuit has acknowledged that there is some question as to whether the estoppel and special circumstances inquiries in *Hemphill* survived *Woodford*, the Court has as yet found it unnecessary to decide the issue and appears to still be considering all three *Hemphill* inquiries in exhaustion cases*. See, e.g., Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011) (finding it unnecessary to decide whether *Hemphill* is still good law because plaintiff had failed to establish that defendants were estopped from raising non-exhaustion as an affirmative defense) (internal quotation marks omitted).

quotation marks omitted); *see also Rivera v. New York City*, No. 12 Civ. 760(DLC), 2013 WL 6061759, *5-7, 2013 U.S. Dist. LEXIS 163797, at *13-16 (S.D.N.Y. Nov. 18, 2013) (finding that plaintiff who claimed he was never informed of the grievance appeals process was entitled to a hearing on the issue). The Court finds that Plaintiff's claim that he was unaware that a grievance to which a response had not been made could be appealed, and that because of his circumstances was unable to use the law library to find out, raises a question of fact that precludes summary judgment on the issue of exhaustion and recommends that Defendants' request for summary judgment on exhaustion grounds be denied.

### B. Superintendent Racette

Plaintiff did not name Green Meadow Superintendent Racette as a defendant in this action. (Dkt. Nos. 1 and 29.) Racette was made a party by the Court solely for the purpose of allowing service and discovery on the identity of John and Jane Doe. (Dkt. No. 6 at 3,5.) In his opposition to Defendants' motion for summary judgment, Plaintiff has acknowledged that Racette had no direct involvement in the alleged failure to address his attempt to commit suicide by taking nine pills, and that he could possibly be dismissed as a defendant. (Dkt. No. 49 at 6.) Plaintiff argues, however, that Racette is liable in a supervisory capacity because he allowed Defendant Brunelle to "run rampant with reckless abandonment." (Dkt. No. 49 at 6, 13.)

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

11

("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22-23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections . . . in a § 1983 claim") (citing *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873.[13]

There is no evidence in the summary judgment record showing any involvement by

---

[13]   The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) has arguably nullified some of the categories set forth in *Colon*. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of this motion that *Colon* remains good law.

Racette in the handling of Plaintiff's alleged suicide attempt which falls within the categories identified in *Colon* or which reveals a tangible connection between any action by Racette and the alleged attempt. *See Bass,* 790 F.2d at 263. To the contrary, Racette stated in his Declaration that he had no personal involvement in Plaintiff's medical or mental health care at any time, as those matters were delegated to the facility medical and mental health professionals. (Dkt. No. 46-4 at ¶ 4.) Moreover, according to Racette, there is no documentation in Plaintiff's security file indicating that he had attempted to bring problems with the medical staff to Racette's attention, and Racette was not privy to information that would lead him to believe Plaintiff's medical and mental health needs were not being properly addressed while he was confined at Great Meadow. *Id.* at ¶ 5. Based upon Racette's Declaration, Plaintiff's acknowledgment that Racette had no direct involvement in the handling of his suicide attempt (Dkt. No. 49 at 6), and the absence of any evidence showing that Racette's conduct fell within any of the *Colon* categories, I recommend that summary judgment be granted dismissing Plaintiff's Complaint as against Defendant Racette.

### C.     Defendant Brunelle

Plaintiff claims that despite being aware that he had taken nine unidentified pills and was suffering the effects of an overdose, Brunelle failed to properly examine him to ascertain the effects of the overdose and take steps to insure that he was provided necessary medical treatment. (Dkt. Nos. 29 at 5-7; 39-4 at 2.) According to Plaintiff, Brunelle failed to follow the DOCCS policy on poison control,[14] and also failed to document his condition, *i.e.*, vital signs, eye dilation

---

[14] Violations of DOCCS regulations and policies do not give rise to liability under § 1983. *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) ("A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983.").

notes, skin complexion and texture, and membrane hydration, following his ingestion of the pills, thus leaving no record of his condition. *Id.*; Dkt. No. 49 at 3.

Claims that prison officials have intentionally disregarded an inmate's serious medical needs fall under the Eighth Amendment umbrella of protection from the imposition of cruel and unusual punishments. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Prison officials must ensure that inmates receive adequate medical care. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). A claim that prison officials have intentionally disregarded an inmate's serious medical needs has both objective and subjective elements. *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). "The plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Id.* at 72 (citation and internal quotation marks omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citation omitted).

Analyzing the objective element of an Eighth Amendment medical care claim requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin,* 467 F.3d at 279. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care

---

"Furthermore, the violation of a DOCS Directive, alone, is not even a violation of a New York State Law or regulation (much less of 42 U.S.C. § 1983)." *Cabassa v. Gummerson*, No. 01-CV-1039 (DNH/GHL), 2008 WL 4416411, at *6 n.24, 2008 U.S. Dist. LEXIS 106119, at * 28 (N.D.N.Y. Sept. 24, 2008).

provided is 'reasonable.'" *Jones v. Westchester County Dept. of Corrections Medical Dept.*, 557 F. Supp.2d 408, 413 (S.D.N.Y. 2008) (quoting *Salahuddin*, 467 F.3d at 820).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 820. The focus of the second inquiry depends on whether the prisoner claims to have been completely deprived of treatment or whether he claims to have received treatment that was inadequate. *Id.* If "the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.*

Not every medical need is a serious medical need. The Second Circuit has defined "serious medical condition" as "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quotation marks omitted); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03. A finding of a serious medical need "is necessarily contextual and fact-specific," and therefore, "must be tailored to the specific circumstances of each case." *Smith v. Carpenter*, 316 F.3d at 185.

Under the subjective element, medical mistreatment rises to the level of deliberate

indifference only when the relevant official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  To establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference.  *Id*.; *Chance*, 143 F.3d at 702. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511 U.S. at 835.  An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference."  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Moreover, a subjective belief on the part of a prison official that his or her conduct poses no risk, even if unsound, is not deliberate indifference so long as it is sincere.  *See Salahuddin*, 467 F.3d at 281.  "[M]ere negligence is not actionable, nor is mere medical malpractice . . . tantamount to deliberate indifference."  *Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012) (internal quotation marks omitted); *see also Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

Brunelle has submitted evidence showing that Plaintiff did not have a serious medical need as a result of his ingestion of pills. The Ambulatory Health Record for Plaintiff on the date of his suicide attempt identifies Plaintiff's self-harm only as an attempt to cut his left wrist.  (Dkt. No. 47 at 7.)  Plaintiff was seen by a social worker, who recommended that he be placed on twenty-four hour watch for two days.  (Dkt. No. 46-6 at ¶ 8.)  According to Brunelle, Plaintiff did not exhibit any symptoms consistent with an overdose.  (Dkt. No. 46-5 at ¶¶ 7,11.)  The watch

log reveals that Plaintiff was well enough to accept and eat a meal at around 11:30 a.m., about two and a half hours after he claims to have taken the pills.  The log indicates that Plaintiff ate again at 2:50 p.m that day.  *Id.* at 9.  The watch log is devoid of notations indicating that Plaintiff complained of or displayed any serious medical problems as a result of ingesting pills, or that he requested medical treatment.  (Dkt. No. 42-2 at 9-11.)  Certainly, there is no evidence suggesting that Plaintiff was suffering from "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *See Hathaway*, 99 F.3d at 553.

As previously noted, Plaintiff claims that after taking the pills, he blacked out a number of times, had labored breathing at times, suffered from extreme muscular cramping, throat swelling, fatigue, directional confusion, migraines, and trembling that would not stop, was extremely sensitive to light and noise, had severe nasal discharge, and experienced sharp pain. (Dkt. No. 29 at 6.)  However, he has failed to set out specific facts with regard to any of the alleged symptoms.  Plaintiff has not included any facts indicating how long after he ingested the pills the many and diverse symptoms he has described began to appear, or how long the various symptoms continued.  Plaintiff has provided no evidence of any lasting injury as a result of the overdose.

Where, as in this case, evidence submitted in opposition to a motion for summary judgment that is, at best, "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50.  Even if the Court were to assume solely for purposes of this motion that Plaintiff did have a serious medical condition as the result of ingestion of the pills, there is no support for Plaintiff's claim that Brunelle acted with deliberate indifference in connection with the overdose.

Brunelle alerted the sergeant on duty in Plaintiff's cell block when she saw that he was highly agitated. (Dkt. No. 46-5 at ¶¶ 7-8.) She attempted to interview Plaintiff when he was brought to the hospital with a report of self-harm and was told he didn't care anymore. *Id*. at ¶ 9. Brunelle did not see any symptoms consistent with a drug overdose and, based upon her observations, concluded that Plaintiff did not need medical attention for ingestion of pills. *Id*. at ¶¶ 11-12. However, when Brunelle examined Plaintiff and found fresh abrasions on his left wrist that indicated an apparent attempt at self-harm, she acted to protect Plaintiff from further self-harm by notifying personnel in the Great Meadow Mental Health Unit, where Plaintiff was ultimately placed on twenty-four hour watch. *Id*. at ¶ 13.

Even if an inference that Plaintiff had a serious medical need could reasonably have been drawn from the list of symptoms he claims to have disclosed to Brunelle, the evidence establishes that Brunelle did not draw that inference and, in fact, concluded the opposite based upon her own observations of Plaintiff. If Brunelle was incorrect in her conclusion that Plaintiff did not need medical care for the ingestion of pills, it was at most negligence that cannot support a § 1983 claim.

Given the foregoing, the Court concludes that Brunelle did not violate Plaintiff's Eighth Amendment right to adequate medical care and recommends that Plaintiff's motion for summary judgment and entry of default be denied, and Brunelle's cross-motion for summary judgment be granted.

### D. Qualified Immunity

Defendants have also raised qualified immunity as grounds for summary judgment. Because the Court has concluded that there was no constitutional violation in this

case, it need not reach the issue of qualified immunity. *See, e.g., Sankar v. City of New York*, 867 F. Supp. 2d 297, 309 (E.D.N.Y. 2012).

E.     **Defendant John Doe**

In his Complaint, Plaintiff identifies Defendant John Doe as the Green Meadow Nurse Administrator.[15]  (Dkt. No. 29 at 5.)  Plaintiff has alleged in his Amended Complaint that as head Nurse Administrator at Great Meadow, John Doe presides over the actions and proceedings of the facility's medical department.  *Id*.  The other allegation in the Amended Complaint regarding John Doe is that his disregard of Plaintiff's pain solidified in Plaintiff's mind how unworthy of caring he was.  *Id*. at 7.

28 U.S.C. § 1915(e)(2)(B) provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted . . . ."[16]  Even assuming the truth of the allegations in Plaintiff's Amended Complaint regarding Defendant John Doe, Plaintiff has failed to plead "enough facts to state a [§ 1983] claim to relief that is plausible on its face against him." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   As with Defendant Racette, the Plaintiff has failed to allege personal involvement by John Doe in the violation of his Eighth Amendment right to adequate medical care as is required for an award of

_____

[15]  In the Court's October 15, 2012, Decision and Order, Plaintiff was directed to take reasonable steps to ascertain the identity of the Doe defendants listed in the Complaint and, if appropriate to move for permission to add the individual by name as a defendant.  (Dkt. No. 6.)  Although Plaintiff subsequently filed an Amended Complaint (Dkt. No. 29) substituting Defendant Brunelle for Defendant Jane Doe, the docket for this case does not reflect that Defendant John Doe has ever been either identified or served by Plaintiff.

[16]  A Decision and Order granting Plaintiff's application to proceed *in forma pauperis* was filed on October 15, 2012.  (Dkt. No. 6.)

damages under § 1983.  *See McKinnon*, 568 F.2d at 934.  His alleged supervisory status in the Green Meadow Medical Department is insufficient to implicate him in Plaintiff's § 1983 claim, *id*., and the Amended Complaint does not suggest that any of the *Colon* categories discussed with regard to Defendant Racette apply to John Doe.

In short, Plaintiff has failed to state a claim against John Doe, and the Court therefore recommends that the Amended Complaint be dismissed as against him under 28 U.S.C. § 1915(e)(2).  Although the Court would ordinarily recommend granting Plaintiff leave to amend to allege the personal involvement of John Doe,[17] if the district court accepts this Court's finding that Plaintiff's Eighth Amendment right to adequate medical care was not violated, amendment would be futile.  Therefore I recommend that dismissal of the Amended Complaint against Defendant John Doe be with prejudice.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's motion for summary judgment and entry of default (Dkt. No. 39) be **DENIED**; and it is further

**RECOMMENDED** that Defendants Racette and Brunelle's motion for summary judgment (Dkt. No. 46) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's Amended Complaint be dismissed with prejudice against Defendant John Doe pursuant to 28 U.S.C. 1915(e)(2)(B); and it is hereby

**ORDERED** that the Clerk provide Plaintiff with copies of the following unpublished

---

[17]  Although a *pro se* plaintiff who has failed to state a claim should ordinarily be allowed at least one opportunity to amend his or her complaint, an opportunity to do so is not required where, as in this case, the problem with plaintiff's claim is substantive such that a better pleading will not cure it.  *Cuoco v. Mortisugu*, 222 F.3d 99, 112 (2d Cir. 2000).

decisions cited herein:  *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876

(S.D.N.Y. Oct. 28, 1999); *Murray v. Palmer*, No. 9:03-CV-1010 (GTS/GHL),

2010 WL 1235591 (N.D.N.Y. Mar. 31, 2010); *Belile v. Griffin*, No. 9:11-CV-0092 (TJM/DEP),

2013 WL 1776086 (N.D.N.Y. Feb. 12, 2013); *Rivera v. New York City*, No. 12 Civ. 760(DLC),

2013 WL 6061759 (S.D.N.Y. Nov. 18, 2013); *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT),

2012 WL 651919 (N.D.N.Y. Feb. 28, 2012); *Cabassa v. Gummerson*, No. 01-CV-1039

(DNH/GHL), 2008 WL 4416411 (N.D.N.Y. Sept. 24, 2008).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL</u>**

**<u>PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: November 25, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge